

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Ayn B. Ducao
Assistant United States Attorney
Ayn.Ducao@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4819
MAIN: 410-209-4800
FAX: 410-962-3091

February 13, 2017

Katherine Tang Newberger, Esquire
Michael Oppenheimer, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

      Re:    United States v. David Edward Weatherholtz
            Criminal No. ELH-15-0131

Dear Ms. Newberger and Mr. Oppenheimer:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by close of business on February 15, 2015, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Counts Three and Four of the Second Superseding Indictment, each of which charges him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### COUNT THREE

That in or about August 2012, in the District of Maryland,

    a.    The victim was under the age of eighteen;

1

  b. The defendant used, employed, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct; and

  c. The visual depiction was mailed or actually transported or transmitted in or affecting interstate or foreign commerce; or that the defendant knew or had reason to know that the visual depiction would be mailed or transported or transmitted in or affecting interstate or foreign commerce; or that the visual depiction was produced using materials that had been mailed or transported in or affecting interstate or foreign commerce.

## COUNT FOUR

That on or about August 2010, in the District of Maryland,

  a. The victim was under the age of eighteen;

  b. The defendant used, employed, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct; and

  c. The visual depiction was mailed or actually transported or transmitted in or affecting interstate or foreign commerce; or that the defendant knew or had reason to know that the visual depiction would be mailed or transported or transmitted in or affecting interstate or foreign commerce; or that the visual depiction was produced using materials that had been mailed or transported in or affecting interstate or foreign commerce.

### Penalties

  3. a. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows are: 30 years imprisonment (including a mandatory minimum sentence of fifteen years imprisonment) per count, lifetime supervised release, and a $250,000 fine. In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b. The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. §2250.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the statement of the

3

facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.    This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt. This Office and the Defendant understand, agree and stipulate following applicable sentencing guidelines factors (except where specifically noted):

      a.    **PRODUCTION OF CHILD PORNOGRAPHY (John Doe 1) - Count Three (Group Three)**

          (1)    The base offense level is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

          (2)    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because there was the commission of a sexual act or sexual conduct.

          (3)    Pursuant to U.S.S.G. § 3B1.3, there is a two (2) level increase because there was an abuse of a position of trust.

          (4)    Thus, the adjusted offense level for Count Three is 36.

b. **PRODUCTION OF CHILD PORNOGRAPHY (John Doe 1) – Count Four (Group Two)**

(1) The base offense level is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

(2) Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the offense involved a minor who had not attained the age of sixteen years.

(3) Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because there was the commission of a sexual act or sexual conduct.

(4) Pursuant to U.S.S.G. § 3B1.3, there is a two (2) level increase because there was an abuse of a position of trust.

(5) Thus, the adjusted offense level for Count Four is 38.

c. **RELEVANT CONDUCT**

(1) The stipulated statement of facts sets forth numerous instances of illegal sexual contact with minors and the production of child pornography. A plea agreement containing a stipulation that specifically establishes the commission of additional offense shall be treated as if the defendant had been convicted of additional count charging those offenses. U.S.S.G. § 1B.2. However, the Defendant contends that the conduct concerning Count Eight, Attempted Enticement, in violation of 18 U.S.C. § 2422(b), should not be counted as relevant conduct. The Government contends that such conduct is relevant conduct. The parties agree that the Government may present evidence regarding Count Eight and all other relevant conduct at sentencing.

d. **GROUPING – MULTIPLE COUNT RULES**

(1) Because Counts Three and Four involve separate instances of illegal conduct involving John Doe 1, they do not group. Count ~~One~~ Four is the highest offense level (38) and counts as one unit. Count ~~Six~~ Three counts as an additional unit.

(2) Each instance of illegal sexual contact with each of the minors as described in the statement of facts and as charged in the indictment (Counts One, Two, Five, and Counts Seven through Fifteen) is a separate group and this Office contends that the guidelines for each range from 30 to 44. The Defendant contends that the guidelines for Counts One, Two, Five, and Counts Seven through Fifteen range from 28 to 38. The parties specifically dispute the application of the following guideline enhancements. [— second superseding]

(a) This Office contends the two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A) applies to Counts One, Two, Five, and Seven. The Defendant does not contend that it applies to any of these counts.

5

(b) This Office contends that the four-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(4)(A) applies to Count Two. The Defendant does not contend that it applies to Count Two.

(c) The Defendant contends that the two-level reduction pursuant to U.S.S.G. § 2G2.2(b)(1)(C) applies to Counts Nine through Fifteen. This Office does not contend that it applies to any of these counts.

(3) Applying the Multiple Count Rules in Chapter 3, there are far more than 5 units and the increase in offense level is by five (5) levels.

(4) Thus, the adjusted offense level at this point is **between 41 and 49**.

### e. ACCEPTANCE

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office *will not* make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Accordingly, after acceptance of responsibility, the adjusted offense level is between **39 and 47**.

### f. REPEAT SEX OFFENDER AGAINST MINORS.
Pursuant to U.S.S.G. § 4B1.5(b), there is a five (5) level increase because the Defendant engaged in a pattern of activity involving prohibited sexual conduct.

Accordingly, the final adjusted offense level is between **44 and 52**.

### Obligations of the United States Attorney's Office

7. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including evidence related to the counts of the indictment (Counts One and Two, and Counts Five through Fifteen), the government agrees to dismiss at sentencing.

8. This Office will recommend a period of **50 years'** incarceration and lifetime supervised release.

9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

### Forfeiture

10. The Defendant client agrees to forfeit all right, title and interest in the following items described in Attachment A:

   a. the Defendant's interest in the commercial real estate property located at 12600 Marjan Lane, Ocean City, MD 21842, which amounts to $105,471.12 from the proceeds of the sale of 12600 Marjan Lane, Ocean City, Maryland 21842 ordered to be held by counsel for U.S. Bank National Association by the Court in U.S. Bank National Association v. David Weatherholtz, Jr., et al., Case No.JKB-15-3777;

   b. a Western Digital Hard Drive, serial number WD-WMAM9VR66718;

   c. a Dell Inspiron 1525 Laptop, serial number HPVKYG1, containing a Toshiba hard drive, serial number 295GT60ZTCV8EC;

   d. a Dell Desktop computer, serial number 73BBYD1, containing a Western Digital hard drive, serial number WCASY2211489; and

   e. a Dell Inspiron Desktop Computer, serial number JMBQHX1, containing a Seagate Barracuda hard drive, serial number W2AV516Z, and a Seagate Barracuda hard drive, serial number 5QE4ASYX.

11. The Defendant agrees to assist fully the United States in the forfeiture of these assets. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding. The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

12. The Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

13. This Office will recommend to the Attorney General that any net proceeds derived from the sale of the Forfeited Assets, including the $105,471.12 from the proceeds of the sale of 12600 Marjan Lane, Ocean City, Maryland 21842 ordered to be held by counsel for U.S. Bank National Association by the Court in *U.S. Bank National Association v. David Weatherholtz, Jr.*, et al., Case No. JKB-15-3777, be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that this office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

## Restitution

14. Under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

## Collection of Financial Obligations

15. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

16. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

8

17. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Waiver of Appeal

18. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:



a. The ~~Defendant~~ parties knowingly waives all right, pursuant to 28 U.S.C. § 1291, or otherwise, and 18 U.S.C. § ~~3149~~ 3742 to appeal the Defendant's conviction and sentence.

b. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### No Contact With the Victims

19. The Defendant shall not directly or indirectly contact the victims, or any victim's family or friends from the date of this plea agreement, during the Defendant's incarceration and during any period of supervised release. During the period of supervised release, the probation officer will verify compliance. Direct or indirect contact includes, but is not limited to, letters, communication devices, audio or visual devices, visits, or communication through a third party. The Defendant shall not enter the premises or loiter near where the victim resides or works. The Defendant shall report immediately but not later than eight (8) hours to the probation officer any unauthorized contact with the victims or victims' family or friends. This paragraph does not apply to contact that members of the Defendant's family may have with either John Doe 3 or John Doe 4 as part of customary family relationships.

### Obstruction or Other Violations of Law

20. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations

to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

21. As stated above, the Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

### Entire Agreement

22. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Ayn B. Ducao
Paul A. Riley
Assistant United States Attorneys

    I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2-13-17
_____
Date                     David Edward Weatherholtz

    We are David Edward Weatherholtz's attorneys. We have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/13/17
_____
Date                     Katherine Tang Newberger, Esquire
                                    Michael Oppenheimer, Esquire

## ATTACHMENT A - STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant David Edward Weatherholtz, age 57, is a resident of Berlin, Maryland. From at least August 1990 through his arrest in 2015, the Defendant had sexual contact and/or sexual intercourse with at least four minors, including family members and a child whom he mentored and taught as owner of the theater business named "OC Jamboree" located at 12600 Marjan Lane, Ocean City, Maryland.

On December 3, 2014, a detective corporal with the Worcester County Sheriff's Office working in an undercover capacity responded to an ad entitled "looking for a horny young 'friend with benefits' - 42 (Ocean City/Ocean Pines)" that was posted to a known classified advertisements website on the Internet. The Internet is an interstate facility. Records obtained from the website identified the Defendant as the person who posted the advertisement, and further indicated that the ad was one of many posted by the Defendant from 2009 to December 2014 for the purpose of meeting young males interested in sex. These ads included titles such as "any young guys looking to get blown" and "any young guys wanna be sucked off."

The Defendant and the detective working undercover exchanged emails several times and then transitioned the conversation to text messaging on December 8, 2014. That text messaging was via cellular phones. Cellular phones are interstate facilities. In these text messages, the detective identified himself as a thirteen-year-old deaf white male who lived with his aunt in Snow Hill. During these text messages, the Defendant sent the detective a video file depicting the Defendant greeting the purported thirteen-year-old deaf white male.

The Defendant also sent text messages to the detective posing as a thirteen-year-old deaf white male to meet the Defendant in Worcester County, Maryland.

They arranged to meet on Tuesday, December 16, 2014 at about 12:30 pm at the McDonalds in Snow Hill, Maryland. The Defendant also indicated in his text messages that he would bring the 13-year old back to the Defendant's residence at 49 Deep Channel Drive, Berlin, Maryland.

On December 16, 2014 at approximately 12:30 pm, the Defendant arrived in Snow Hill in his vehicle, a 2005 Kia Sorento, and was taken into custody.

On December 16, 2014, law enforcement executed a search and seizure warrant on the home of the Defendant at 49 Deep Channel Drive, Berlin, Maryland. During the search warrant, numerous computers, hard drives and other storage media devices were seized including the following: (a) one Western Digital Hard Drive, serial number WD-WMAM9VR66718; (b) a Dell Inspiron 1525 Laptop, serial number HPVKYG1; (c) a Dell Desktop computer, serial number 73BYD1; and (d) a Dell Inspiron Desktop Computer, serial number 5QE4ASYX.

These items were subsequently forensically examined and numerous still photographs and one video of the Defendant performing or receiving anal or oral sex on or from a minor (John Doe 1) were located. The images and video indicate that the Defendant's sexual contact with John Doe 1 occurred for at least seven years, beginning, at the latest, when John Doe 1 was 12 years old. The Defendant met John Doe 1 through the Defendant's work as a musician, music teacher, and owner of the theater business named "OC Jamboree" located at 12600 Marjan Lane, Ocean City, Maryland.

The media contained, among other images, the following:

(1) an image of a minor male, John Doe 1, standing naked, with genitals visible, superimposed over a rainbow album cover.

(2) an image of John Doe 1 tied and bound to a bed with his genitals wrapped with a red string.

(3) an image of John Doe 1's head, face, and genitals.

(4) an image of John Doe 1's anus, genitals and lower half of his body while lying on a bed.

(5) an image of John Doe 1's genitals and abdomen with what appears to be semen on his abdomen.

(6) a video of the defendant and John Doe 1 engaged in sexual intercourse.

The location of the sexual abuse depicted in some of the photographs and videos was within the Defendant's residence at 49 Deep Channel Drive, Berlin, Maryland.

At some point during 2016 and prior to August 2016, the commercial property formerly occupied by the OC Jamboree at 12600 Marjan Lane, Ocean City, Maryland was sold to a new owner. On or about August 17, 2016, an employee of the new owner found a cardboard box on the property that was addressed to "Aaron Weatherholtz"—the Defendant's dog—and that listed the sender as one of the Defendant's relatives. Inside that cardboard box were (1) various printed pictures of minor males engaged in sex acts; (2) sheets of paper called "official progress charts" that depicted dated, hand-traced outlines of erect male penises; (3) CDs and DVDs; and (4) two VHS-compatible camcorder cassette tapes.

One of these CDs contained images and a video, among others, of the Defendant and John Doe 1 engaged in oral and anal sex, as well as images of John Doe 1's penis taken on dates that correspond to dates on the "official progress charts." One of the CDs also contained images of John Doe 2, another minor male, engaged in sexually explicit conduct, including an image of John Doe 2 with his buttocks exposed and spreading his buttocks to expose his anus. These images were taken inside the Defendant's residence at 49 Deep Channel Drive, Berlin, Maryland.

Furthermore, the two VHS cassettes found within the box contained a movie of the Defendant having sexual contact with minor family members—John Doe 3 and John Doe 4—including oral and anal sex. These images were produced at the residence of the Defendant in New Jersey in 1990.

The total number of relevant images recovered is at least 34 videos and 810 still images. All of the media from which images of child pornography were recovered were manufactured in whole or in part outside the state of Maryland.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it.

_____
David Edward Weatherholtz, Defendant

We are Mr. Weatherholtz's attorneys. We have carefully reviewed the statement of facts with him.

_____
Katherine Tang Newberger, Esquire
Michael Oppenheimer, Esquire